The next matter is William J. Wagner v. Chiari & Ilecki. Your Honors, may it please the Court, my name is Brian Promberg, and I represent the plaintiff appellant William J. Wagner in this case. This case boils down to two questions. First, whether initial communications targeting the wrong person can violate the Fair Debt Collection Practices Act. And second, whether what defendant did here is entitled to the bona fide error defense under the Fair Debt Collection Practices Act. Maybe the first time they would be entitled to the bona fide error. But didn't they go after this guy more than once? Oh, absolutely, Your Honor, yes. In fact, they went after him after he had two phone calls where he proved he wasn't the right person, and nevertheless, they kept coming after him. How did he prove it? By his Social Security number? He gave, it's not clear whether it was the last two or the last four of his Social Security number and... And his birth date. And the year of his birth, yes. He told them that. And he told them that. And yet they still sent him documents seeking his financial information? Yes. They served a subpoena ducis tecum. Subpoena ducis tecum, Your Honor. And the restraining order? The restraining order, yeah, exactly, Your Honor, yes. It started out, well, the chain basically is that first, when they got the judgment, they started pursuing everyone with the name William J. Wagner. It probably, it appears, within a 50-mile radius within of where William J. Wagner initially lived, where William J. Wagner, Jr. initially lived. And then they let the case sit from roughly 2011 to 2015. Come 2015, they ran, they assigned the case to another lawyer. She pulled up a LexisNexis search, which they did not keep a copy of. And then they proceeded to come after our client, the plaintiff. The underlying debt here was for rent. Yes. And at some point they discovered that William J. Wagner, the plaintiff here, owned his house since the 80s. Didn't they discover that? That was actually, that was actually our, they should have discovered that. They should have. And they did that, something called the real, real list? Yes, they pulled up the real list, yes. And the real To show that he was a homeowner since the 80s? Yes. And so it was counterintuitive to think that someone who owned a house for that length of time would have accumulated a rental debt. Isn't that true? Absolutely, Your Honor. And not only was it a rental debt, it was a rental debt for subsidized housing, for low-income housing. Right. And he owns his own house. Right. And yet they pursued him still. Yes. And even if they claim to have thought that he was the father of the person who made the debt or incurred the debt, that's implausible, too, not only because they're both of approximately the same age and certainly the same generation, and that was also in these real reports and in their files, but also because the renter, the person, the debtor, had represented that he'd lived with his parents at a different, in a different town on the application for the housing, right? Yes. And in fact, that address matched an address that was on the LexisNexis report that they pulled and showed that his parents were still living there. So it corroborated what he had put into his, what he had put into his apartment application back in 2005, I believe it was. There's also another view. What is at stake here? I mean, what are the damages or what are the statutory penalties or what are you actually asking for in this complaint, if you succeed? Well, it would be statutory damages up to $1,000, plus attorney's fees and costs, plus actual damages for his emotional distress. And he's really like, I mean, did he go to the hospital and had to be, had to take psychiatric medication because he was so distressed? It's garden variety emotional distress. Garden variety emotional distress damages. So we're not talking about, maybe the attorney's fees by now, given the resistance to this claim by the defendant, have run up a certain bill. But I'm kind of puzzled about why this case hasn't been resolved, given that the plaintiff's claim would seem relatively modest. What the defendants are pursuing is a very old debt for under $2,000. Presumably what they stand as the lawyer for the creditor to gain is from this whole operation is rather modest. Why, has there been any kind of effort at mediation through our court program? We did have a conference with a camp staff attorney. Of course, I'm not going to ask what went on there. It just puzzles me that we've got this case here in this court, given what's at stake and given what seems to be at least a very plausible claim by the plaintiff, why this thing hasn't gone away. But that's, you know, people litigate for all kinds of reasons to protect their reputations because they're really annoyed or whatever. And it's not for me to tell them not to, but it is, it does strike me as a very peculiar case to be here in the court of appeals. I don't think I've ever seen, frankly, an FDCPA case that wasn't a class action. I know, I'm usually here on class action. There's something new under the sun every time you sit, I guess. Your Honor, I can't go into what happened at the camp conference. You don't know? Of course not. You can't get into that and you shouldn't. I'm just, maybe I'm just encouraging you folks, after this is over, to go, relieve us of the obligation to write an opinion here. And one issue that also, you know, comes to me, aren't there issues of fact here? I mean, I understand you're asking for summary judgment in your favor, not just to overturn the summary judgment in their favor. But when we get to issues of did they have reasonable procedures, let's acknowledge that it was a mistake. Let's acknowledge that those procedures broke down. Let's acknowledge that they really should have, you know, at least a reasonable jury could find, that they really should have consulted their own files better and determined that they shouldn't be here. They shouldn't be pursuing your guy. Isn't that something that ultimately a jury has to decide as to whether these procedures that they allegedly had in place, A, were really there, B, were in fact reasonable procedures, and C, whether this was a kind of good-faith error or not? Well, Your Honor, ordinarily I would say, yes, it's clearly a question of fact. But the key is, there's not really that much dispute over the facts. We have the, we have Ms. Overbeck, who was conducting, who sent the subpoena Dukas-Tecum out for service, admitting that at that point she did not, you know, she did not believe that, well, she did not know, frankly. She didn't know one way or the other. She didn't know one way or the other. So she didn't know one way or the other. That's not a reasonable procedure as a matter of law. In addition, we have Ms. Overbeck. All the way after she was contacted by plaintiff's counsel, not by me, by the local counsel in the Buffalo area, it was only then, and this is quoting from the notes, pulled physical file, copy of lease, ledger, original pleadings, confirmed this debtor's SS number. They didn't pull the file until the very end. And they still have not withdrawn the subpoena Dukas-Tecum. It's sitting out there in limbo in some kind of strange abeyance or forbearance, whatever you want to call it. But it can be. Breyer. And what about the restraining notice? Is that still in effect? I mean, I understand that under New York law, it would not be effective at the end of the day if it's the wrong, served on the wrong person. And now everyone seems to acknowledge it's the wrong person. But at the same time, if I wanted, if Mr. Wagner was going to sell his house and I was thinking of buying it, would I encounter in a title search some restraining notice or has that been withdrawn? Well, it hasn't been withdrawn, but I believe it expires after a year unless there's some kind of renewal. Okay. What its effect would be in the event it served on the wrong person is an interesting question. It would be any alleged money that would be owed to William J. Wagner, Jr., presumably, would be restrained. I mean, it's still kind of, but in any event, it's more than a year. It expires typically. Okay. So we don't have to worry about it. At least Mr. Wagner doesn't have to worry about that anymore. Right. But, you know, once you've got someone coming after, you know, pulling the physical file only when a lawyer gets involved, that's not meaningful attorney involvement. If we go back to the Miller versus Wolpoff case from 2003, you know, you've got to have meaningful involvement. You have to have meaningful review. Not pulling the file, your own office file. This isn't even requesting stuff from the defendant. This stuff's already in the file, presumably from the prior lawyer who worked on it up until 2011. There's no excuse for that. And as a matter of law, I believe that there should be found to be no bona fide error. Nevertheless, if the court doesn't want to go that far, I can certainly understand that. Well, whether you understand, if you understand it, then that suggests that you may be thinking about possibly the settlement value of the case rather than just assuming that you've got a dead bang winner as soon as we issue our opinion. There's something on both sides to be thought about here in terms of risks, litigation risks. Well, there is one thing I can talk about with respect to what I think is going on here, why the case hasn't resolved. The defendants did win another case involving bona fide error a number of years ago against, I believe it was against a different firm, and that may have empowered them to feel let's press ahead. Well, maybe they'll feel differently after this day. It's possible. All right. We'll reserve some time for rebuttal. Thank you. We'll hear from the appellee. May it please the Court. Catherine Howard on behalf of Chiari Anielecki. I want to take a moment to really discuss the record in this case and address some of the allegations about whether or not Chiari Anielecki reviewed the file or had information in the file that would have put them on notice had they done a reasonable review that they had the wrong address. It is undisputed in the record. They had the wrong person. Not just the wrong address, but the wrong person. They had the correct person, William J. Wagner, Jr. They had an incorrect address for William J. Wagner, Jr. The plaintiff here is not William J. Wagner, Jr. That's correct. The plaintiff is not. They had the wrong person that you were trying to collect from. So all of Chiari Anielecki's debt collection communications were addressed to William J. Wagner, Jr. You could address it to him, but it wasn't him. It was not received by him. I agree. And the reason for that is because Chiari Anielecki did a reasonable search. They did search their file, and I do want to just correct perhaps a misconception that Chiari Anielecki did not search its file or review its file before undertaking the debt collection efforts. After he called to say this isn't me. I think before that, you know, debatable, you know, whether it's a bona fide error or not, but once he calls and says, hey, you've got the wrong person. Absolutely. So after the appellant called, he provided the last two digits of his social security number. It's not in dispute whether he gave two or four. He gave two. And he gave the month and year of his date of birth, not the full date. So that was an insufficient amount of information just based on that. To whom? What's the – well, I guess does your client have any written procedures for what's supposed to happen in the situation when there's a call that says you've got the wrong person? There are no written procedures, but there is a procedure in place, and that procedure is as follows. First, the person who takes the call records the information. They record what the caller says. In this case, that someone called disputed that they had received a debt collection communication that was not for them and that they had provided two digits of their social security number in the first call and the month of date of birth in the second call. The next part of the procedure is that after they record that information, they notify the attorney who was working on the case. Again, that occurred here. The next part of the procedure is that the attorney who's working on the case does not send a subsequent follow-up debt collection effort until they check the file. Again, that occurred here, which was why Ms. Overbeck was aware of the dispute. The next step is if the attorney, using reasonable judgment and experience – and some of that experience is the individual's call and they say that they are not the debtor and they provide misleading information. If the individual has established that they're not the debtor, they cease all debt collection communications. That is the procedure. Mr. Wagner did not establish he was not the debtor by giving those two pieces of information. Those two pieces of information were insufficient. Nevertheless, Kieran and Leckie – According to whom were they insufficient? According to Kieran and Leckie's procedures, the two digits and the month and date of birth didn't give them enough data. No, wait. No, wait. No, wait. I understand that if you're trying to collect a debt and you send somebody a notice and he comes back and calls you and says it's not me and, you know, my name is actually something different and my date of birth is something – is this – it could be the real guy and he could just make up any date of birth he wants and make up any social security number he wants. So I understand that you may not be required to believe what the person says. I don't understand the argument that if I give two digits or four digits or any digits of my social security number and it does not match the debtor's, that is sufficient information if believed, right? It's not – why would he have to give you more digits? Why would he have to say my date of birth is September 4, 1951 rather than just I was born in September 1951 if that does not match the information about the actual debtor? Absolutely, Judge, because if the plaintiff had given sufficient information like four digits or a date of birth, Kier and Alecki could have run a search and they could have seen there is a person named William J. Wagner that matches, but with just two digits it wasn't enough. Nevertheless, Kier and Alecki's procedures are not to simply continue to collect when someone disputes. One further question. You say these are the procedures because that's what Mr. Alecki says are his procedures. Why isn't it up to a jury to decide whether they believe that given A, it's not written down, B, there's considerable information here that suggests that if the procedure does not call for someone to look back at their actual files and see whether this matches in any way or is inconsistent with what you know about the debtor, that that's an unreasonable procedure and that if your procedures do call for that and, you know, it isn't... it wasn't done, which certainly casts some doubt on what Mr. Alecki says are the invariable, unwritten, but well understood within the firm, apparently, guidelines. Why aren't all of these jury questions? Absolutely. I do think if this Court were to remand for a jury that there would be sufficient information, obviously, for a jury to consider and I believe would find that the procedures were reasonable. Here, though, the record... The relevant point for you, excuse me, is whether there are sufficient information in the record that a reasonable jury might disagree with you and think they are unreasonable procedures or that they don't really exist or that they so flagrantly were not complied with here that you don't get the defense. Sure, and a few points to that, Your Honor. First, the fact that the procedures are not written down is not fatal to the bona fide error defense and it's not fatal... No, of course not, if the jury believes that they really existed. Absolutely. And here, not only did Mr. Alecki testify as to what the procedures were in his affidavit, in our discovery responses and discussed in both Mr. Alecki's affidavit and deposition testimony and Ms. Overbeck's affidavit and deposition testimony, everything matched up. They, in fact, did follow their procedures. And that brings me to the very important point that they did check the file both before they began their debt collection activities and again after Mr. Wagner called to dispute that he was not the debtor. They followed their procedures by not simply continuing to send a letter out blindly. They double-checked all their work. They ran the searches again. They did all of that. And I do want to just direct the Court... Forget the searches again. Is it false that in your file of the original debt there's an application for the apartment that the debtor ran up the rent debt on? Is that in your files? There is a... I want to be very... There is an application for the lease. And in that lease application, the debtor says, I have lived with my parents for the last 45 years. They are my only landlord references. However... Excuse me. And is there an address for where those people lived, where he says he lived? There is, and they... And is that not an address that shows up on the search with a different Wagner family? That is an address... If I understand your question, Judge, that is an address that shows up on the Lexis search. It's also an address that Karen Alecki attempted to contact the debtor at before and was informed by the post office that he no longer received mail there. But... All right, all right. But we're asking... The theory of Ms. Overbeck was that the William Wagner, who is the plaintiff, might have been the father of William Wagner, the debtor. Is that not correct? I think that's a bit of an overstatement. I think that for... As Ms. Overbeck was pursuing the file, her theory was... Tell me what suggests that it's a reasonable belief on anybody's part at the firm that William Wagner Jr. may have resided at the address of William Wagner, the plaintiff. Tell me what that is based on, other than similarity of name. Absolutely. Ms. Overbeck ran a Lexis search using William J. Wagner Jr. and his complete Social Security number. That Lexis search turned up a list of addresses. Ms. Overbeck reviewed that search. She reviewed the file, and this is how we know that she reviewed the file before she began the search, and we know that she looked at the lease before she began the search, because she compared the addresses on the Lexis search. This is in her testimony, and I can give the record sites that the court would like. She compared the addresses on the Lexis site to what the file showed. She compared it and saw that they had already... they had already tried to contact the debtor at the first two addresses, and that had turned up from the post office and from, you know, other contacts that the debtor no longer resided there. For all we know, the debtor is dead. For all we know, the debtor has moved to California. We don't know where the debtor lives. The issue for you, if you're gonna go hounding this William Wagner, is do you have any reasonable basis to think he has anything to do with Wagner the debtor? When Wagner the debtor says, not when he's trying to hide out from creditors, when he's applying for the lease, my previous residence for 45 years, he being 45 years old, is with my parents who live at this address. And you know there is a William Wagner who lives at that address. Maybe not William Wagner the debtor, but pretty clearly William Wagner Sr. So what on earth makes you think that someone named William Wagner Jr. might just happen to live with another guy who has the same name, who there's no reason whatsoever to think has any connection to him? So the way I read, the way I understand the record, the lease application in 2005 said, I have lived with my parents at address A, when I believe it was Hartford Road. Then in 2015... But the Lexis search also shows you that this William Wagner has owned this house since 1984. No, it does not. And that I think is a very important point that I was hoping to get across. The Lexis report does not, and the real info report does not. The real info report, and Mr., our opposing counsel mentioned this during his argument, the real info report simply shows that a William Wagner and a Julie Wagner owned 5419 Roberts Road. It does not say that they had owned it since 1984. That information was obtained when the plaintiff provided a mortgage and deed. Is it possible? As part of this litigation. When did he supply the mortgage and deed? When he filed for summary judgment. Ah. So is it possible  they could have gone an extra step and pulled the mortgage and deed? Yes, of course it's possible. But the bona fide error defense does not require a debt collector to take every conceivable precaution to avoid against error. It requires reasonable procedures. And here, those reasonable procedures included reviewing its file, comparing the addresses to the addresses on a Lexis report that was generated using his specific Social Security number, and then reviewing the file and comparing and making reasoned judgment, which, by the way, the Miller case, the opposing counsel's site, approves of using reasoned legal judgment. What is the document on page A295? I don't have that in front of me. You maybe should, if you're going to be here arguing in this court. Because the document on page A295, which I believe is the document that starts at A293, for informational purposes only, copyright 2015, LexisNexis, has the address at 5419 Roberts Road and there's a date next to it, 5-1985-4-2015. Is that not... And I understand that this may not be the original LexisNexis report, which may have been destroyed, but isn't it agreed by the parties that the new version is the same kind of document as the old and has the same information that the original one would have had? It is, Your Honor. So what does this 5-1985-4-2015 suggest, if not that that is the period during which this family, William G. Wagner, William J. Wagner, Julia Leona Wagner, lived at that address? It's certainly possible that that's what it suggests. However... And you're telling me that no reasonable juror could think that that's something that if you saw that on the address, you're not supposed to try and put that together with the information that you have and decide whether this is a reasonable person to pursue as a possible harborer of the debtor William Wagner, Jr. I would say that under the bona fide error standard, which requires reasonable procedures and it's operating under the assumption that a mistake was made. And... But it's not just a mistake. Of course a mistake was made, but the question is would reasonable procedures have prevented that mistake? And I'm having trouble understanding myself, let alone concluding that as a matter for summary judgment, no reasonable juror could conclude that once somebody says, I'm the wrong guy, I have nothing to do with this, gives you some information that if believed, certainly tells you that he's not the debtor, and now you're thinking maybe the debtor lives there and your only reason to think that is that this William Wagner is one of a half a dozen William Wagners that live somewhere in this vicinity. Why would anyone think that this person is connected to the debtor when there's all kinds of information available to you that would tell you that he apparently is not the father of the debtor and there's no particular reason to think there's any connection at all? I wouldn't want to be summing up to a jury on those facts, frankly, let alone, as a judge, I'm having trouble understanding why that isn't something that a reasonable juror couldn't make a finding in favor of the plaintiff on. I have two things to that and I know that I'm out of time. First, I do want to say that the Lexis report and the nine addresses that are listed are not, they're not understood to be nine different William Wagners and could they be, they're understood to be possible addresses for Wagner, Jr., the debtor. I do see and understand absolutely what Your Honor pointed out about the dates for the residence on the 5419 Roberts Road. But what the bonafide error requirements require is a reasonable search and a mistake happens and here the procedures were to review the file and to review the Lexis and although something may have gone perhaps overlooked that does not mean that the bonafide error defense does not apply as a matter of law and I would just point this Court to the Abdulloza case in the Seventh Circuit. There was found as a matter of law that the bonafide error defense applied even though the debt collector could have put together the information that was in its file to realize that it was accidentally collecting on a time bar debt and for those reasons we would ask that this Court affirm the district Court. Thank you. Mr. Bromberg you have three minutes for rebuttal. Thank you Your Honor. I have very little to add except well first of all I'm not sure about the restraining notice how long it lasts. I believe when it's served on a garnishee it lasts for only a year. I'm not sure about this situation. I'd have to double check the CPLR. With respect to there's only one other matter of fact I'd like to straighten out there's the claim that the file was pulled prior to the lawyer calling the records and I'm looking at A512 which are the notes made by Ms. Overbeck looking for June 29th 2015 and this is confirmed there's a William J. Wagner with SS number ending in 3918 DOB and that's redacted 1950 living at Roberts Road not our debtor and then you jump down a couple of lines pulled physical file copy of lease ledger original pleadings confirmed this debtor's social security number okay there's it seems that the defendant maybe this is a question of fact for a jury it seems that the defendant is conflating file with physical file okay it looks like it wasn't until June 29th 2015 that Ms. Overbeck went and pulled the physical file which had been created by the prior attorney working on the matter up until 2011 and by anyone who had worked on it before then uh that doesn't mean that she hadn't pulled the file on some previous occasion that means on that date in response to that there's no prior reference to pulling the file uh but you know I assume that in all the years that this debt has been pending uh the file doesn't sit on the same person's desk the whole time uh if you want to go look at it you go look at it that doesn't mean you've never looked at it before true but you haven't worked on the file before presumably the first thing you do when you take over a file after a four-year hiatus is you say okay give me all the papers maybe I should go through this see what's going on are you seeking an opportunity to put this case before a jury or are you seeking summary judgment below they moved for summary judgment below their motion was granted yours was denied and you're appealing both parts of that ruling right so we would certainly I'd rather go in front of a jury having already won on the issue of liability but the second best is you know you go forward and you try it in front of a jury all right     thank you your honor the next case on our case is a case on a case on a case on a case